*546 OPINION OF THE COURT
George B. Ceresia, Jr., J.
The petitioner was the victim of two unrelated incidents of violent crime which occurred in 1984 and 1985. In the first incident he was robbed and shot in the head at close range. In the second incident he was held up at gunpoint. Since shortly after these incidents occurred he has received continuous counseling and therapy, via telephone, for psychological injuries sustained as a result of said crimes. Counseling services have been provided by William Buse, CSW, and have been fully funded by the respondent under article 22 of the Executive Law. Petitioner indicates that he continues to experience panic attacks, fears of being attacked, fears of traveling on public transportation, withdrawal, depression and fears of being outside at night. On August 22, 2005 the respondent issued a determination disallowing reimbursement for telephone counseling. Petitioner sought a full hearing with respect to the issue, which was conducted on February 8, 2006. In a decision dated March 22, 2006 the respondent affirmed the August 22, 2005 determination. The instant proceeding has been commenced to review respondent’s determination to deny petitioner reimbursement for the expense of telephone counseling with William Buse.
The petitioner alleges that the determination was arbitrary and capricious, unlawful and not supported by substantial evidence. He asserts that the new policy to deny reimbursement for telephone counseling is ineffective and therefore unenforceable by reason that it was not adopted in accordance with the Rules of the Crime Victims Board (see 9 NYCRR 525.17) or the State Administrative Procedure Act. Petitioner also argues that he has been denied reasonable accommodation under the Americans with Disabilities Act of 1990 (see 42 USC ch 126). In addition, he points out that in March 2005 the respondent published an advisory bulletin approving compensation for telephone counseling services.
Respondent has submitted the affidavit of its General Counsel, Everett A. Mayhew, Jr. Mr. Mayhew (as relevant here) indicates that from April 1985 to August 2006 the respondent reimbursed petitioner $79,104 for fees for counseling services provided by Mr. Buse. Of that amount roughly $66,000 was for telephone counseling. According to Mr. Mayhew, at its November 2003 monthly meeting the respondent decided that it would no longer reimburse crime victims for the expenses of telephone *547 counseling. Mr. Mayhew indicates that the determination was made for two reasons: (1) that in-person counseling is far superior to telephone counseling, since the counselor/therapist receives the benefit of nonverbal means of communication (facial expressions, posture, and general demeanor), and (2) it is difficult to verify that telephone counseling actually occurred. The determination was subsequently memorialized in the form of policy statement No. 06-004, approved by the respondent on February 16, 2006. Mr. Mayhew indicates that the advisory bulletin to which the petitioner makes reference does not relate to psychotherapy (the counseling which petitioner currently receives). Rather, it relates to other counseling services.
The determination dated August 22, 2005 recited, in part, as follows:
“The Board has received a mental health treatment report provided by William Buse, CSW This report indicates that your mental health treatment as of August 6, 2004 remains entirely causally related to the crime which occurred on August 24, 1984. The report further indicates you require therapy once weekly.
“Therefore, payment for treatment will continue to be reimbursed to you by the Board at the rate of 100%. Bills for services rendered through April 27, 2005 have been reimbursed. You may continue to submit mental health treatment bills to the Board for consideration of compensation for up to one session per week.
“However, please be advised that counseling via the telephone is no longer authorized by the Board as a matter of policy. Therefore, as of the date of this letter, no new telephone counseling sessions will be authorized. You may submit bills for telephone counseling dated from April 28, 2005 through the date of this letter to the Board for consideration of compensation” (emphasis supplied).
Turning first to petitioner’s claim for relief under the Americans With Disabilities Act (ADA; see 42 USC ch 126), as respondent points out, petitioner did not raise this issue in the administrative proceedings before the respondent. As such, petitioner failed to exhaust his administrative remedies with respect to his arguments under the ADA (see Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57 [1978]). Assuming, however, that the petitioner suffers a disability within the mean *548 ing of the ADA,[1] an issue exists with regard to whether respondent has provided reasonable accommodation. The relevant inquiry with respect to reasonable accommodation “asks not whether the benefits available to persons with disabilities and to others are actually equal, but whether those with disabilities are as a practical matter able to access benefits to which they are legally entitled” (Henrietta D. v Bloomberg, 331 F3d 261, 273 [2d Cir 2003], cert denied 541 US 936 [2004], citing Alexander v Choate, 469 US 287, 300-301 [1985]). “A ‘reasonable accommodation’ is one that gives the otherwise qualified plaintiff with disabilities ‘meaningful access’ to the program or services sought” (Henrietta D. v Bloomberg, supra at 282, quoting Alexander v Choate, supra at 301). In the court’s view, the respondent has demonstrated that it has provided reasonable accommodation in that it stands ready to furnish meaningful access to psychotherapy services through in-person counseling. The court concludes that petitioner’s fourth claim for relief[2] must be dismissed.
Turning to petitioner’s first and second claims for relief, it is well settled that administrative rules must be promulgated in substantial compliance with the State Administrative Procedure Act (see Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854 [2003]). The State Administrative Procedure Act requires submission of notice of the proposed rulemaking to the Secretary of State for publication in the State Register, followed by a public comment period, a public hearing (where applicable), and the filing and publication of a notice of adoption of the rule (see State Administrative Procedure Act §§ 202, 203). Only after the foregoing is completed is the rule deemed effec *549 tive (see State Administrative Procedure Act § 203 [1]). It is undisputed that none of the requirements under State Administrative Procedure Act §§ 202, 203 were followed with respect to adoption of the policy statement. Accordingly, the issue then narrows to whether or not the policy statement constituted a “rule” within the meaning of the State Administrative Procedure Act.
In Matter of Alca Indus. v Delaney (92 NY2d 775 [1999]) the Court of Appeals differentiated between “ad hoc decision making based on individual facts and circumstances” and “rulemaking, meaning ‘any kind of legislative or quasi-legislative norm or prescription which establishes a pattern or course of conduct for the future’ ” (Alca Indus. v Delaney, supra at 778, quoting People v Cull, 10 NY2d 123, 126 [1961]). “Choosing to take an action . . . based on individual circumstances is significantly different from implementing a standard or procedure that directs what action should be taken regardless of individual circumstances” (id.). “Rulemaking, in other words, sets standards that substantially alter or, in fact, can determine the result of future agency adjudications” (id.). Phrased differently,
“ ‘ “only a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers constitutes a rule or regulation required by NY Constitution, article iy § 8” or Administrative Procedure Act § 102 (2) (b) (i) to be filed in the office of the Department of State and published in the State Register’ ” (Matter of Pallette Stone Corp. v State of N.Y. Off. of Gen. Servs., 245 AD2d 756, 758 [3d Dept 1997], quoting Matter of New York City Tr. Auth. v New York State Dept. of Labor, 88 NY2d 225, 229 [1996], quoting Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health, 66 NY2d 948, 951 [1985]).
The policy statement adopted by the respondent, to discontinue reimbursement for telephone counseling, appears on its face to be uniformly applicable without regard to individual facts and circumstances. It appears to stand as a fixed general principle, and expressly states that there are no exceptions. The court finds that it constitutes a rule within the meaning of NY Constitution, article iy § 8 and State Administrative Procedure Act § 102 (2) (a).
Respondent advances the further argument that the policy statement falls within an exception to the State Administrative *550 Procedure Act as a rule “concerning the internal management of the agency which do[es] not directly and significantly affect the rights of or procedures or practices available to the public” (State Administrative Procedure Act § 102 [2] [b] [i]). In the alternative, respondent maintains that the procedural requirements of the State Administrative Procedure Act do not apply since the policy statement is an “interpretive statement [ ] and statement [ ] of general policy which in [itself] ha[s] no legal effect but [is] merely explanatory” (State Administrative Procedure Act § 102 [2] [b] [iv]). The court disagrees with both contentions, since the purpose of the policy is to preclude reimbursement to crime victims for telephone counseling. It is not interpretive, and is not merely explanatory. The policy statement is not an internal directive. Rather it directly impacts recipients of psychotherapy counseling (members of the public) by denying reimbursement for the costs of such services.
In failing to follow the procedural requirements of the State Administrative Procedure Act, respondent violated its own rule (see 9 NYCRR 525.17 [a] [4]). Inasmuch as the policy statement never became effective as a rule, it could not properly serve as the sole basis of respondent’s determination to deny petitioner reimbursement for telephone counseling. Under the circumstances, the court finds that respondent’s determination to deny reimbursement was arbitrary and capricious and affected by an error of law.
With respect to petitioner’s third claim for relief, ordinarily attorney’s fees may not be collected by a prevailing litigant where there is no agreement, statute or rule providing for such (see, Matter of Thompson [S.L.T. Ready-Mix, Div. of Torrington Indus.], 216 AD2d 656 [1995]; Matter of Timoshevich, 133 AD2d 1011 [1987]; see also, Bibeau v Ward, 228 AD2d 943 [3d Dept 1996], lv denied 89 NY2d 804 [1996]). Under Executive Law § 626 (1), compensable “out-of-pocket loss” is defined as including “the cost of reasonable attorneys’ fees for representation before the board and/or before the appellate division upon judicial review not to exceed one thousand dollars” (Executive Law § 626 [1]). The instant proceeding is not one before the Board or the Appellate Division.[3] From a review of the hearing *551 transcript, it does not appear that the petitioner was represented by counsel in proceedings before the respondent. The court discerns no basis to award attorney’s fees within the narrow constraints of Executive Law § 626 (1). The court concludes that petitioner’s third claim for relief must be dismissed.
In summary, the court concludes that the petition must be granted with respect to petitioner’s first and second claims for relief, but must otherwise be denied.
Accordingly, it is ordered and adjudged that petitioner’s third and fourth claims for relief be and hereby are dismissed; and it is further ordered and adjudged that the petition is otherwise granted, and that respondent’s determinations dated August 22, 2005 and March 22, 2006 be and hereby are vacated and annulled insofar as they deny reimbursement for counseling via telephone.

. Under ADA § 12102 (2),
“[t]he term ‘disability’ means, with respect to an individual—
“(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
“(B) a record of such an impairment; or
“(C) being regarded as having such an impairment” (42 USC § 12102 [2]).
Respondent points out that petitioner’s papers indicate that he has twice bicycled from the site of his shooting in Brooklyn, New York, to Albany, New York, in furtherance of his effort to promote public awareness of head trauma injury. This included a bicycle trip of 1,000 miles. While not minimizing the very serious nature of the injuries which the petitioner suffered, he did not in the court’s view adequately demonstrate specifically how or in what respect his injuries fell within the foregoing categories of disability.

. The court, in referring to petitioner’s causes of action, has followed the nomenclature adopted by the petitioner (claim for relief).

. Under Executive Law § 629 (1), the New York State Comptroller may commence a special proceeding in the Appellate Division, Third Department, *551 to review a decision of the board where he or she finds the award to be illegal or excessive (see Executive Law § 629 [1]). The same section provides that “[a]ny claimant aggrieved by a final decision of the board may commence a proceeding to review that decision pursuant to article seventy-eight of the civil practice law and rules” (id.).